UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HAZEL L. DYER,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:14-cv-454
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

**I. Procedural Background**

Plaintiff protectively filed applications for DIB and SSI in January 2011, alleging disability since November 29, 2010, due to anxiety, depression, and a thyroid condition. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Robert W. Flynn. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On January 14, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since November 29, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: multiple sclerosis in remission, obesity, thyroid disease, migraines, depressive disorder, personality disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: frequently lift or carry 10 pounds; lift up to 20 pounds occasionally; stand/walk for a total of six hours in an eight-hour workday; sit for a total of six hours in and eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; frequent overhead reaching on the right; frequent handling, fingering, and feeling with the right upper extremity; avoid concentrated exposure to extreme heat; avoid all exposure to work at unprotected heights, involving use of moving machinery, or commercial driving; work limited to simple, routine, and repetitive tasks, in a low stress environment defined as free of fast paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes, and occasional contact with the public, co-workers, and supervisors.

6. The [plaintiff] is unable to perform any past relevant work[1] (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1978 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 29, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[1] Plaintiff has past relevant work as a cashier, stocker, personal caregiver, and machine operator. (Tr. 66).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues: (1) the ALJ failed to resolve inconsistencies between the Dictionary of Occupational Titles (DOT) and the VE's testimony as required by SSR 00-4p; and (2) the ALJ's reliance on the VE's testimony was improper because the ALJ did set forth a complete hypothetical question during the hearing. (Doc. 12).

1. <u>Whether the ALJ erred at Step Five of the sequential evaluation process by failing to resolve purported inconsistencies between the VE's testimony and the DOT</u>.

At the ALJ hearing, the ALJ posed questions to the VE concerning a hypothetical person with plaintiff's age, education, and past relevant work, and several differing residual functional

5

capacities (RFC). The first hypothetical question concerned a person with the following limitations:

> [T]he individual [is] limited to lifting up to 20 pounds occasionally, lift or carry up to 10 pounds frequently; stand or walk for approximately six hours of an eight hour workday; and sit for approximately six hours of an eight hour workday with normal breaks. Further limited to never climbing ladders, ropes, or scaffolds; limited to occasional climbing ramps or stairs; as well as occasional balancing, stooping, crouching, kneeling and crawling; limited to, limited to frequent overhead reaching; frequent handling, fingering and feeling; and that's frequent overhead reaching with the right upper extremity; frequent handling, fingering and feeling bilaterally; limited to avoiding concentrated exposure to extreme heat; as well as avoiding hazards such as the use of moving machinery, commercial driving, or exposure to unprotected heights.

(Tr. 67). The VE testified that a person with the above limitations would be capable of performing plaintiff's past relevant work as a cashier. (*Id.*). The ALJ then asked the VE if the person would be able to perform plaintiff's past relevant work assuming the individual was "further limited to occasional overhead reaching with the right upper extremity and limited to occasional handling, fingering and feeling with the right upper extremity but still frequently with the left upper extremity." (Tr. 68). The VE testified that the limitations on use of the upper extremities would preclude such an individual from performing plaintiff's past relevant cashier work and clarified that the DOT does not discriminate between the left and right in terms of limitations on upper extremities. (*Id.*). The VE further testified that an individual with the above limitations who was limited to "no overhead reaching with the right upper extremity; occasional handling, fingering, feeling with the right upper extremity but frequent with the left" was capable of performing sedentary work as a surveillance systems monitor and an election clerk. (Tr. 69-70). The VE stated that the election clerk position, DOT code 205.367-030, is an

6

unskilled, entry level, sedentary clerical job with 3,230 positions in the regional economy and 2,828,140 positions in the national economy. (Tr. 70).

The ALJ asked the VE whether a person who was "limited to work that involved simple, routine and repetitive tasks, performed in a low stress work environment, defined as free of fast paced production requirements involving only simple, work related decisions; few, if any workplace changes; and only occasional interaction with the general public, co-workers, and supervisors" would be able to perform the jobs of surveillance systems monitor and election clerk. The VE confirmed such an individual would be able to perform these jobs. (*Id.*). The ALJ then asked what the effect would be if this same person could have no interaction with the general public and the VE responded that the election clerk position requires some superficial interaction with the general public and the surveillance systems monitor position required no interaction with the public. (Tr. 70-71). When asked by the ALJ, the VE confirmed that his testimony, "with the exceptions mentioned already," was consistent with the DOT. (Tr. 71).

During cross-examination by plaintiff's counsel, the VE testified that election clerks "work during elections and other times during the year" and "about 70 percent are full time and about 30 percent are part time or seasonal during the election season." (Tr. 71-72). The VE testified that he relied on a data-compiling computer program called Job Browser Pro, which compiles data from the Department of Labor, in classifying the work as full-time work for 70 percent of election clerks. (Tr. 72-74). The VE reiterated that the election clerk position requires superficial contact with the public by way of information gathering and survey work and stated that the DOT does not specify the level of public contact involved with this work. (Tr. 72-73).

7

Based on the VE's testimony, the ALJ found at Step Five of the sequential evaluation process that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (Tr. 25). Specifically, the ALJ found plaintiff could perform work as a "surveillance systems monitor (DOT Code 379.367-010), with 90 jobs regionally and 74,470 jobs in the national economy, or election clerk (DOT Code 205.367-030), with 3,230 jobs regionally and 1,979,678 jobs in the national economy." (Tr. 26).

Plaintiff argues the ALJ erred in relying on the VE's testimony that she could perform work as an election clerk because his testimony was inconsistent with the DOT's description of the job in two significant ways. First, the DOT "describes the job of election clerk as a seasonal one, a job performed only during elections." (Doc. 12 at 8, citing Tr. 8, a printout of the DOT's description of the election clerk position). Plaintiff maintains this description is in direct conflict with the VE's testimony that 70 percent of election clerks work on a permanent, full-time basis. (*Id.*). Second, the DOT description of the election clerk job indicates that this work requires "a great deal of interaction with the public and others, including requesting identification of voters at polling places, obtaining voter signatures, distributing ballots to voters and answering questions regarding voting procedures." (*Id.*). Plaintiff contends this description is inconsistent with both the VE's testimony that the election clerk job requires only superficial interaction with the public and the ALJ's finding that plaintiff is limited to work requiring only occasional contact with the public, co-workers, and supervisors. (*Id.*, citing Tr. 17). Plaintiff asserts the ALJ's failure to resolve these inconsistencies is reversible error because if she cannot perform the election clerk work, the only remaining work identified by the VE was the surveillance systems monitor job of which there are only 90 regional and 74,470

8

national positions, which are insufficient to meet the ALJ's burden at Step Five of the sequential evaluation process to show plaintiff can perform a significant number of jobs in the economy. (*Id.* at 9).

The ALJ did not commit reversible error at Step Five of the sequential analysis despite the apparent inconsistency between the DOT and the VE's testimony. The ALJ has a duty under Social Security Ruling 00-4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00-4p, 2000 WL 1898704, at *2 (2000). Where the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; *see also* SSR 00-4p ("*If* the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.") (emphasis added).

As detailed above, the VE testified that the election clerk position required only superficial interaction with the general public and that 70 percent of election clerks worked on a full-time basis while 30 percent worked only seasonally during elections. *See* Tr. 70-72. The DOT describes the job of election clerk as follows:

> Performs any combination of the following duty *during elections*: Compiles and verifies voter lists from official registration records. Requests identification of voters at polling place. Obtains signatures and records names of voters to prevent voting of unauthorized persons. Distributes ballots to voters and answers questions concerning voting procedure. Counts valid ballots and prepares official reports of election results.

9

Dictionary of Occupational Titles, Appendix C, 4th Ed., rev. 1991 (available at http://www.occ upationalinfo.org/20/205367030.html) (last visited June 11, 2015) (emphasis added).

The inconsistencies between the DOT's description and the VE's testimony regarding the election clerk job are readily apparent. The DOT clearly provides that the job exists only "during elections," which is plainly inconsistent with the VE's testimony that 70 percent of election clerks work on a full-time basis. The DOT's description indicates that the job requires more than superficial interaction with the public as its job functions primarily involve direct interaction with the voting public, which is inconsistent with the VE's testimony that the job requires only superficial interaction with the public. Notably, the VE testified at the ALJ hearing that he was not sure whether the election clerk job required occasional or more frequent contact with others. *See* Tr. 74. The ALJ erred by failing to resolve the inconsistencies identified by plaintiff's counsel at the hearing. *See* SSR 00-4p, 2000 WL 1898704, at *1 (ALJs "must [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved.").[2]

However, this error is harmless as the ALJ further determined that plaintiff was also capable of performing work as a surveillance systems monitor based on the VE's testimony. *See* Tr. 26. The VE testified there were 90 surveillance systems monitor jobs locally and 74,470

---

[2] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

nationally. (Tr. 69). Plaintiff argues the ALJ cannot meet his burden at Step Five of the sequential evaluation process by finding she is capable of performing work only as a surveillance systems monitor because, based on the VE's testimony, there are not a significant number of surveillance systems monitor jobs in the regional market and the ALJ never analyzed the facts of plaintiff's case to determine whether a significant number of jobs exist. (Doc. 12 at 9-10; Doc. 19 at 2-5).

The ALJ's burden at Step Five of the sequential evaluation process is to demonstrate that plaintiff can perform substantial gainful employment that exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon*, 168 F.3d at 291-92. "Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). The Social Security regulations clarify that "[i]t does not matter whether . . . work exists in the immediate area in which you live. . . ." 20 C.F.R. §§ 404.1566, 416.966. In determining what constitutes a significant number of jobs, the Court should apply a common sense standard to the facts in each individual plaintiff's case. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Some of the criteria the Court may consider include: the level of plaintiff's disability; the reliability of the vocational expert's testimony; the reliability of the plaintiff's testimony; the distance plaintiff is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.* at 275.

Plaintiff's argument that the 90 regional jobs identified by the ALJ is insufficient to meet his Step Five burden ignores the ALJ's determination that there are 74,470 jobs in the national economy that plaintiff is capable of performing. The ALJ's burden is to establish that a significant number of jobs exist in the national economy that plaintiff can perform – in the region where plaintiff lives *or* in several other regions of the country. 20 C.F.R. §§ 404.1566, 416.966. The 74,470 jobs identified by the VE outside of the region in which plaintiff lives constitute a significant number. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578-79 (6th Cir. 2009) (4,800 jobs in the national economy is a significant number); *Nash v. Sec'y of H.H.S.*, 59 F.3d 171, 1995 WL 363381, at *3 (6th Cir. June 15, 1995) (finding that 70,000 jobs was a significant number of jobs in the national economy); *Putman v. Astrue*, No. 4:07-cv-63, 2009 WL 838155, at *2-3 (E.D. Tenn. Mar. 30, 2009) (citing cases) (200-250 regional jobs and 75,000 national jobs constitute significant numbers). Thus, the ALJ's decision at Step Five is substantially supported by the record even if the number of "regional" jobs is determined to be insufficient.

In her reply memorandum, plaintiff cites to *Mackins v. Astrue*, 655 F. Supp.2d 770, 773 (W.D. Ky. 2009) (holding that 900 jobs in the state of Kentucky and 60,000 jobs in the national economy did not constitute a significant number) and *Lenon v. Apfel*, 191 F. Supp.2d 968, 979 (W.D. Tenn. 2001) (finding that 65 jobs within 75 miles of the plaintiff's residence was not a significant number). *Mackins* and *Lenon* are distinguishable from the instant case.

In *Mackins,* the district judge affirmed the magistrate judge's recommendation to reverse and remand the ALJ's finding at Step Five primarily because the hypothetical question posed to the VE did not reflect all of the plaintiff's supported limitations. *See Mackins*, 655 F. Supp.2d at 772-73. Moreover, the district judge questioned the reasonableness of the ALJ's reliance on

the VE's testimony that there were 900 local and 60,000 national copy machine operator jobs as this work appeared outmoded given current technology. *Id.* at 773. Unlike the *Mackins* plaintiff, plaintiff here does not argue that the ALJ failed to account for all of her limitations in formulating her RFC or in presenting hypothetical questions to the VE. Accordingly, the level of plaintiff's disability weighs in favor of affirming the ALJ's decision because the VE was able to identify jobs plaintiff is capable of performing with her limitations. *See Hall*, 837 F.2d at 275. The concerns about the availability of jobs noted by the *Mackins* court are not present here. *Id.*

In *Lenon*, the VE testified that there were 117 local inventory clerk jobs but there was "no indication in the hearing transcript that the ALJ received testimony as to the number of interviewing clerk jobs available in the local economy." *Lenon*, 191 F. Supp.2d at 978. The *Lenon* court accordingly found that the ALJ's finding that there were 117 inventory clerk *and* interviewing clerk jobs was not supported by substantial evidence. *Id.* at 979. Further, there was no evidence in the record before the *Lenon* court as to the number of jobs in the regional or national economy that the plaintiff could perform; the VE only provided testimony as to jobs within 75 miles of the plaintiff's home. *Id.* The concerns raised by the *Lenon* court regarding the lack of evidence before the ALJ are not present here as the VE explicitly testified that plaintiff could perform 74,470 surveillance system monitor jobs in the national economy.

Moreover, consideration of the *Hall* factors warrants affirming the ALJ's Step Five determination. As stated above, the VE took into account all of plaintiff's supported limitations and testified that plaintiff was capable of performing work as surveillance systems monitor.[3] The level of plaintiff's disability weighs in favor of affirming the ALJ's decision because

13

plaintiff is capable of performing work with her current limitations. Although the VE's failure to resolve inconsistencies between his testimony and the DOT's description of the election clerk job calls into question the reliability of his testimony as to that job, there is no indication of similar inconsistencies between the VE's testimony and the DOT description of the surveillance system monitor job. In addition, the ALJ determined that plaintiff was not entirely credible because she was not wholly compliant with treatment recommendations and because her subjective statements were inconsistent with the clinical and objective evidence of record. (Tr. 21-22). The reliability of plaintiff's testimony therefore weighs in favor of affirming the ALJ's decision.[4] There is no evidence regarding the distance plaintiff is capable of traveling or the isolated nature of surveillance systems monitor jobs. Thus, these factors do not weigh in favor of or against affirming the ALJ's decision. As stated above, however, the availability of 74,470 surveillance systems jobs in the national economy constitutes a significant number of jobs under Sixth Circuit precedent and weighs in favor of affirming the ALJ's Step Five determination. The balance of the *Hall* factors supports affirming the ALJ's decision.

For the above reasons, the Court finds that the ALJ's determination at Step Five of the sequential evaluation process is substantially supported and plaintiff's first assignment of error should be overruled.

2. Whether the ALJ presented an incomplete hypothetical question to the VE.

For her second and final assignment of error, plaintiff contends the "ALJ's reliance on the [VE]'s testimony was improper" because the ALJ never offered a complete hypothetical question. (Doc. 12 at 10). Plaintiff cites to the RFC formulated by the ALJ and maintains that

---

[3] Plaintiff does not maintain that she is incapable of performing work as a systems surveillance monitor.
[4] Plaintiff does not challenge the ALJ's credibility determination.

because the "particular combination of limitations [set forth in the RFC formulation] was never presented to the ALJ," the ALJ erred in relying on the VE's testimony. (*Id.* at 11, citing Tr. 18).

Plaintiff appears to argue that the ALJ's Step Five determination is only supported by substantial evidence where the VE's testimony is in response to a single hypothetical question incorporating all of a claimant's supported limitations. Plaintiff cites to no authority nor is the Court aware of any regulation or case law imposing such a restriction. For the following reasons, the Court finds the ALJ's reliance on the VE's testimony was not in error.

All that is required for the ALJ to meet his burden at Step Five by relying on a VE's testimony is that the hypothetical questions posed accurately portray the plaintiff's individual physical and mental impairments. *See Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations and quotations omitted). As detailed *supra*, the ALJ found that plaintiff retained the following RFC:

> [She can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: frequently lift or carry 10 pounds; lift up to 20 pounds occasionally; stand/walk for a total of six hours in an eight-hour workday; sit for a total of six hours in and eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl; frequent overhead reaching on the right; frequent handling, fingering, and feeling with the right upper extremity; avoid concentrated exposure to extreme heat; avoid all exposure to work at unprotected heights, involving use of moving machinery, or commercial driving; work limited to simple, routine, and repetitive tasks, in a low stress environment defined as free of fast paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes, and occasional contact with the public, co-workers, and supervisors.

(Tr. 17). At the ALJ hearing, the ALJ asked the VE several hypothetical questions, including whether a person with the physical limitations set forth in the above RFC who *was additionally limited* to "no overhead reaching with the right upper extremity; [and] occasional handling,

15

fingering, feeling with the right upper extremity but frequent with the left" could perform work in the national economy. The VE testified that such a person could perform work as surveillance systems monitor or election clerk. *See* Tr. 67, 69-70. The VE further testified that such a person could still perform these jobs with the mental limitations found in the ALJ's RFC formulation above. *See* Tr. 70-71. Because the VE's testimony was provided in response to hypothetical questions that accurately portrayed plaintiff's impairments,[5] the ALJ was entitled to rely on this testimony to meet his burden at Step Five of the sequential evaluation process. *See Varley*, 820 F.2d at 779.

Accordingly, plaintiff's second assignment of error should be overruled.

## III. Conclusion

For the reasons stated above, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 7/7/15

Karen L. Litkovitz
United States Magistrate Judge

---

[5]Plaintiff's failure to present any argument with respect to the sufficiency of the ALJ's RFC formulation amounts to a waiver. *See McPherson*, 125 F.3d at 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HAZEL L. DYER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-454
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).